AMALGAMATED CLOTHING WORKERS OF AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

Hortex Manufacturing Company, Inc., Intervenor.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

HORTEX MANUFACTURING COMPANY, Inc., Respondent.

Nos. 18839, 18877.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 26, 1965.

Decided Feb. 18, 1965.

Mr. James Graham, New York City, of the bar of the Court of Appeals of New York, *pro hac vice,* by special leave of court, for petitioner in No. 18,839. Mr. Jacob Sheinkman, New York City, was on the brief for petitioner in No. 18,839.

Mr. Richard P. Lawlor, Atty., N. L. R. B., of the bar of the Court of Appeals of New York, *pro hac vice,* by special leave of court, with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Warren M. Davidson, Atty., N. L. R. B., were on the brief, for respondent in No. 18,839.

Mr. Richard P. Lawlor, Atty., N. L. R. B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Warren M. Davison, Atty., N. L. R. B., were on the brief for petitioner in No. 18,877, submitted on the brief.

Mr. John E. Price, Ft. Worth, filed a brief on behalf of intervenor-respondent, Hortex Mfg. Co., Inc., and the cases for Hortex Mfg. Co., were treated as submitted on the brief.

Before DANAHER, BASTIAN and MC-GOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

In one of these two appeals, Amalgamated Clothing Workers of America, AFL-CIO (the "Union") complains in two respects of an order of the National Labor Relations Board. In the other, the Board seeks enforcement of its order as against the objections of the respondent employer, Hortex Manufacturing Company ("Hortex"). The order itself, entered in a proceeding initiated by the filing of unfair labor practice charges by the Union, adopted an Examiner's report which found Hortex in violation of Section 8(a) (1) by reason of discriminatory discharges of three employees, and of Section 8(a) (3) by reason of such conduct as well as surveillance of union activities and various announcements and threats designed to discourage union affiliation. The order entered by the Board directs Hortex to (i) cease and desist from the anti-union activities found to be forbidden by Sections 8(a) (1) and (3), (ii) reinstate the three discharged employees with back pay, and (iii) post the usual notices. The Union says the Board did not go far enough in that it failed to find that (1) a refusal to arbitrate a grievance was a violation of Section 8(a) (5), necessitating enlargement of the order to require Hortex to cease and desist from refusing to bargain with the Union; and (2) speeches to employees by an attorney for Hortex constituted an additional violation of Section 8(a) (1).

We leave the Board's order undisturbed and direct its enforcement as requested by the Board. We see no occasion to discuss in detail either Hortex's objections to the Board's findings, or the Union's claim as to the additional 8(a) (1) violation. Our examination of the record discloses substantial evidence to support the Board's findings on these issues, and there is no claim that the terms of the order are inappropriate to the violations found. Disruptive intervention by us into these determinations would, thus, take us outside the perimeter of proper judicial review as drawn by Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The 8(a) (5) contention advanced by the Union depends to a somewhat lesser degree on the resolution of disputes of fact, and warrants fuller discussion of why we withhold our hand in this respect as well. Some depiction of the setting of the dispute is essential to that discussion.

### I

Hortex operates a clothing manufacturing plant in El Paso, Texas. For many years prior to the expiration on December 31, 1962 of the latest collective bargaining agreement, the Union had been recognized as the exclusive representative of the production and shipping employees. Some indications of apathetic interest by the employees in the Union apparently caused Hortex to permit the contract to terminate and to seek a representation election. This election was held in May of 1963, and resulted in a substantial plurality against the Union. As indicated above, however, the Board found that, beginning in the autumn of 1962, Hortex was engaged in a campaign to discourage union membership which was characterized by certain actual violations of 8(a) (1) and 8(a) (3). One of the employees found to have been discriminatorily discharged was Maria Tornero. This occurred on December 12, 1962. Under the grievance procedure provided in the then existing collective bargaining agreement, a timely grievance was filed by Tornero, and, after review and rejection at the specified management levels, the Union informed Hortex on February 8, 1963 of its desire to have the grievance submitted to arbitration, which was the final step of the grievance machinery contained in the contract. Since the Tornero discharge was the subject of an unfair labor practice charge filed with the Board by the Union on December 27, 1962, Hortex, through its legal counsel, took the position that it would either submit to arbitration under the contract, or defend against the charge in the Board proceeding, but that it was not required to incur the trouble and expense of doing both at the same time. It asked the Union to elect one course or the other; and, upon the Union's failure to do so, Hortex refused to arbitrate. That refusal was then made the subject of the filing of an 8(a) (5) charge by the Union.

The Examiner recommended dismissal of the charge. In his view, Hortex was on unsound legal ground in thinking it could require an election by the Union; and this error had the effect of placing Hortex in default under the contract. However, the Examiner noted what he conceived to be the Board's position that not every breach of a collective bargaining agreement is *per se* an unfair labor practice and required to be treated as such. He also remarked the circumstances that Tornero was otherwise being restored to her job with back pay. In the light of these considerations, he recommended dismissal of the 8(a) (5) charge. The Board adopted this recommendation without discussion.

### II

The Union does not challenge the existence of a general rule to the effect that breaches of collective bargaining agreements are not to be invariably equated with unfair labor practices. Indeed, it could not in this Circuit, at least in the face of what we said in International Union, UMW v. NLRB, 103 U.S.App.D.C. 207, 257 F.2d 211 (1958). There, in setting aside a Board order finding a union guilty of an unfair labor practice for striking rather than arbitrating under the contract, we said (103 U.S.App.D.C. at 210–211, 257 F.2d at 214–215):

> "the Board was of the opinion that the unions committed a breach of contract when the employees struck * * *. Assuming that they did, that is not the end of the inquiry, because a breach of an employer-union contract is not, *per se,* an unfair labor practice. The legislative history of the Taft-Hartley Act shows that. * * *
>
> *    *    *    *    *    *
>
> "In the face of the legislative history just recited, it would seem that the Board has a heavy burden of

persuasion that it does have authority to treat a violation of a term of a collective bargaining contract, even a term providing for the settlement of grievances by arbitration, as an unfair labor practice, and, in effect, decree its specific performance.

\* \* \* "

The Union, rather, urges upon us that the refusal to arbitrate in this instance was an exercise in bad faith by Hortex; and that this bad faith supplies the incremental element which compels the Board to treat a contract breach as an unfair labor practice. The bad faith here is said to reside in the circumstances that (1) the discharge of Tornero was itself an 8(a) (3) violation, (2) Hortex has been found guilty of other 8(a) (3) and (1) violations, and (3) Hortex did not rest its refusal to arbitrate upon a good faith claim that the dispute was not arbitrable under the contract. At the time of the refusal to arbitrate, however, Hortex was preparing to defend itself, in a *bona fide* and non-frivolous fashion, against the alleged 8(a) (1) and (3) violations, including that relating to the discharge of Tornero. It did not refuse to arbitrate that discharge under any and all circumstances; indeed, it signified its readiness to proceed promptly to arbitration on condition that the Union not press simultaneously the administrative litigation with respect to the Tornero discharge. Its professed concern was not that it be relieved altogether of the burden of meeting the Tornero charge in any forum but only that it not be put to the difficulty and expense of meeting it concurrently in two separate forums.

■ We agree with the Board's conclusion that Hortex fell into legal error in its effort to put the Union to an election, and that this error had the consequence of converting Hortex into a contract violator. We have no basis for disagreeing, however, with what appears to us to have been the Board's further conclusion that this breach was due more to mistaken legal advice than to a deliberate. purpose to subvert the terms of a collective bargaining agreement. Compare Local 833, UAW etc. v. NLRB, 112 U.S. App.D.C. 107, 300 F.2d 699, cert. denied, Kohler v. Local 833, etc., 370 U.S. 911, 82 S.Ct. 1258, 8 L.Ed.2d 405 (1962). We do not see much difference, insofar as implications of bad faith are concerned, between a legal mistake of the kind here involved, and one concerning the scope or applicability of the contract. In either case the Board seems to us to have some latitude to draw inferences from the facts before it and to decide that the contract violation is not to be treated as an unfair labor practice. And a court should deny that latitude in a particular case only if it is convinced that the Board's action is arbitrary or that the Board's appraisal of the facts has no support in the record before it.

This approach seems to us necessarily to accord with the strong emanations from Congress to the effect that breaches of labor contracts are not normally the business of the Board. Such expressions were most in evidence in connection with the passage of the Labor Management Relations Act of 1947, and they manifested themselves in two ways. One was the inclusion in the Senate-passed bill of a provision that made an unfair labor practice of contract violations, including expressly refusals to arbitrate, and the subsequent elimination of this provision in conference for the reasons set forth in the conference report as follows:

"The Senate amendment contained a provision which does not appear in Section 8 of the existing law. This provision would have made it an unfair labor practice to violate the terms of a collective bargaining agreement or an agreement to submit a labor dispute to arbitration. The conference agreement omits this provision of the Senate amendment. Once parties have made a collective bargaining contract the enforcement of that contract should be left to the usual processes of the law and not to the National Labor Relations Board."

1 Legislative History of the Labor Management Relations Act 545–46 (1948).

■ The second straw in the wind of legislative policy on this point is the inclusion in this statute, as finally enacted, of Section 301, providing judicial remedies for enforcement of labor contracts, which extend to specific performance of undertakings to arbitrate. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957), and United Steelworkers of America AFL-CIO v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The availability of this alternative argues potently for a high degree of circumspection on the part of the Board in treating of claims of contract violation. That cautionary discretion was exercised here, in the light of the testimony given, against equating the refusal to arbitrate with the refusal to bargain banned by 8(a) (5). We cannot say that the Board erred, either in its weighing of the relevant facts or in its disposition of the Union's claim with respect to them.

The Board's petition to enforce its order is granted; and the Union's petition for review is denied.